UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BABACAR THOMAS,** | : |
| **Plaintiff,** | : Civil Action No. 23-15724 (JXN) |
| v. | : |
| **EQUIFAX INFORMATION SERVICES LLC, et al.,** | : OPINION & ORDER |
| **Defendants.** | : |

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on a motion by Defendants Trans Union LLC ("Trans Union") and Experian Information Solutions, Inc. ("Experian") (collectively, "Defendants") seeking an award of Rule 37 sanctions and attorneys' fees against *pro se* Plaintiff Babacar Thomas ("Plaintiff"). *See* Dkt. Nos. 62, 64.[1] Plaintiff filed two responses in opposition [Dkt. Nos. 65, 67], and a supplemental brief in opposition [Dkt. No. 71]. Trans Union replied [Dkt. No. 70]. For the reasons set forth below, Defendants' motion for Rule 37 sanctions [Dkt. No. 62] is **GRANTED in part** and **DENIED in part**.

**I.   BACKGROUND**

Plaintiff filed a Complaint in this action on September 1, 2023. Dkt. No. 1. Generally, Plaintiff alleges that Defendants Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Transunion LLC ("Trans Union") (collectively, "Defendants") published false and damaging information to his credit report following his Chapter 7 bankruptcy declaration in December of 2022. Accordingly, Plaintiff seeks related relief under

---

[1] Experian joins in Trans Union's motion. *See* Dkt. No. 64.

1

the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq. See id.* ¶¶ 20-27.

Several months after filing for bankruptcy, Plaintiff obtained copies of his consumer credit report from Defendants. *Id.* ¶ 22. After receiving and reviewing those reports, Plaintiff concluded that Defendants "inaccurately" reported his bankruptcy declaration and credit accounts because they allegedly "failed to report that [Plaintiff's] bankruptcy discharge relieved [him] of personal liability on his discharged debts." *Id.* ¶ 24. In other words, Plaintiff alleges that, rather than noting his credit accounts as discharged in bankruptcy, Defendants reported certain credit accounts as "charged off" and thereby negatively impacted Plaintiff's creditworthiness. *Id.* ¶ 26.

Plaintiff claims that, on or about May 23, 2023, he filed disputes with Defendants concerning the "inaccurate information" on his credit report. *Id.* ¶ 27. After receiving "unsatisfactory investigation results," Plaintiff sent a second set of dispute letters to Defendants on or around June 13, 2023. *Id.* ¶ 32. On July 5, 2023, Plaintiff sent a third dispute letter to Trans Union and threatened legal action. *Id.* ¶ 35. On August 17, 2023, Plaintiff sent "final" dispute letters to Defendants for their alleged failure to remove Plaintiff's "unverified accounts" from his credit report. Thereafter, Plaintiff filed this action. *Id.* ¶ 38.

Equifax was voluntarily dismissed from the case on October 5, 2023. Dkt. No. 9. Experian and Trans Union each filed an Answer to Plaintiff's Complaint on November 13, 2023, largely denying the allegations and raising a number of affirmative defenses. *See* Dkt. Nos. 15, 16. Specifically, Defendants contend that Plaintiff's claims are "meritless" and "false[]." Dkt. No. 37 at p. 3. "In fact," Trans Union contends, "Trans Union reported Plaintiff's bankruptcy as discharged and paid as of November 1, 2022 and all of Plaintiff's charged off accounts were updated to 'included in bankruptcy' as of that date." *Id.*

Fact discovery was originally set to conclude on August 30, 2024. Dkt. No. 29 at ¶ 2.

On April 1, 2024, Plaintiff filed his first motion to compel, seeking Trans Union's responses to his initial written discovery requests. Dkt. No. 30 at 3-4. Plaintiff argued that Trans Union's responses to his interrogatories "consist[ed] of boilerplate objections" and lacked "substantive information and documents" and were made in an attempt to "obstruct" his case. *Id.* Trans Union responded and asserted (and still does nearly one year later) that the documents produced by it establish that Plaintiff's credit information was not improperly reported and that, in any event, Plaintiff's motion to compel was made in contravention of the Local Civil Rules. *See* Dkt. No. 31 at p. 1. On May 13, 2024, Trans Union filed a letter with the Court outlining its various discovery disputes with Plaintiff. *See* Dkt. No. 33. In its letter, Trans Union noted Plaintiff's "refusal to respond to Trans Union's written discovery requests . . . which were due on April 1, 2024." *Id.* at p. 1. Moreover, Plaintiff apparently "w[ould] not appear for his deposition properly noticed for June 4, 2024 and [] refused to provide another date to be deposed." *Id.*

The next day, the Court conducted a telephone status conference with the parties. During the May 14, 2024 conference, the Court administratively terminated Plaintiff's motion to compel for his failure to raise his discovery disputes with the Court in the first instance. Dkt. No. 34; *see also* Dkt. No. 29 ¶ 7 ("No motion to compel discovery . . . shall be entertained unless a letter outlining the dispute is submitted[.]"). The Court directed the parties to meet and confer regarding their discovery disputes and mandated responses to any outstanding discovery requests by May 28, 2024. Dkt. No. 34. However, if issues remained, the parties were to submit a joint discovery disputes letter to the Court by June 6, 2024. *Id.*

Three days later, Plaintiff filed a letter accusing Trans Union of "improper[ly] and unethical[ly]" communicating with the Court and admonishing it for "disregard[ing]" Plaintiff's "pending" motion to compel, which had been terminated by the Court during the May 14, 2024

telephone conference. *See* Dkt. No. 36. Trans Union's conduct, Plaintiff argued, demonstrates its "neglect[] [of] its discovery duties" and "hinder[ance]" of this case. *Id.* at 2.

On June 6, 2024, Trans Union filed a letter informing the Court that "Plaintiff has refused to conduct a meet and confer by telephone" regarding the parties' discovery disputes. Dkt. No. 37 at 1; *see also* Dkt. No. 39 at 15 (Plaintiff "carefully considered [Trans Union's] proposal for a phone call to discuss . . . outstanding discovery obligations," but declined, believing it in the "best interests of all parties to keep [] communications in writing."). Plaintiff also failed to serve his responses to Trans Union's discovery requests by May 28, 2024. Dkt. No. 37; *see* Dkt. No. 34. In turn, Trans Union sought an order compelling Plaintiff to appear for his deposition. *Id.* Notably, Plaintiff had already expressed a refusal to attend his properly noticed deposition scheduled on June 4, 2024. *Id.* Trans Union rescheduled Plaintiff's deposition for June 25, 2024, but Plaintiff again "refused" to appear and stated that "[he] will not be able to appear for a deposition until Trans Union has provided the outstanding discovery [he] [] requested." *Id.*

On June 11, 2024, Plaintiff failed to appear for a scheduled telephone conference. Dkt. No. 38. The same day, Plaintiff filed a letter claiming that he had served responses to Defendants' written discovery requests on June 1, 2024. Dkt. No. 39. But Plaintiff had, several days after the deadline for written discovery responses, mailed his responses to counsel for Trans Union's incorrect address (to counsel for Trans Union's Texas, rather than Indianapolis, office). *Id.* at 1. Plaintiff further asserted that "the main problem remains the [D]efendants' own failure to provide the discovery I have legitimately requested." *Id.* at 2. Specifically, Plaintiff claimed that Defendants declined to produce the following information: (1) Automated Credit Dispute Verification ("ACDV") forms for his various disputes spanning May of 2023 through November of 2023, (2) Defendants' internal policies, procedures and training materials related to bankruptcy

4

dispute investigations, and (3) records of other consumer disputes. *Id.* [2] Trans Union maintained that it "ha[d] already produced all documents in its files evidencing Plaintiff's disputes and Trans Union's reinvestigations of same." Dkt. No. 37 at p. 2. Shortly thereafter, on June 28, 2024, Plaintiff filed three separate letters charging Defendants with "engag[ing] in a pattern of delay and obstruction in providing necessary discovery." Dkt. No. 43 at 1; *see also generally*, *e.g.*, Dkt. Nos. 44, 45.

The Court conducted a telephone status conference on July 2, 2024. During the conference, Defendants represented that they had produced to Plaintiff all responsive documents in their possession. Dkt. No. 47 at pp. 4, 6; *see also* Dkt. Nos. 51, 52 (Experian and Trans Union again representing that all Automated Consumer Dispute Verification forms (ACDVs) relating to Plaintiff's disputes were produced). The Court informed Plaintiff during the conference that "[i]f Defendants have provided all they have, there will be no further production obligation on their part." Dkt. No. 42 at ¶ 2. Despite Defendants' repeated representations that they had provided Plaintiff with all responsive documents in existence, in July of 2024, the Court again received numerous communications from Plaintiff. Those communications included letters requesting leave to file various discovery motions and to serve subpoenas, and motions seeking sanctions against Trans Union, compelling Trans Union's deposition, and compelling third-parties' compliance with subpoenas and notices of deposition Plaintiff served upon them. *See* Dkt. Nos. 46, 48-50, 53-54, 56. On August 5, 2024, Plaintiff filed an additional motion for sanctions, this time against Experian

---

[2] Under the FCRA, consumers disputing "inaccurate" entries on their credit reports are required by law to "submit dispute letters to credit reporting agencies which in turn send automated credit dispute verification forms (ACDVs) to the financial institutions reporting the disputed accounts. The despite verification form details the consumer's request to the credit reporting agency . . . [and] includes the consumer's personal information allowing the financial institution . . . to verify the underlying dispute." *Loughry v. M&T Mortg. Corp.*, No. 21-3729, 2023 WL 5635623, at * 2 (D.N.J. Aug. 31, 2023).

for its "failure to appear at a properly noticed deposition." Dkt. No. 56.

On August 6, 2024, the Court issued an order administratively terminating Plaintiff's motion to compel and Plaintiff's motion for sanctions and encouraged the parties to continue discharging their discovery obligations prior to the next telephone status conference, scheduled on September 10, 2024. *See* Dkt. No. 57. On August 13, 2021, in response to Plaintiff's continued accusations against Defendants, Trans Union filed a motion for a protective order seeking to preclude Plaintiff from deposing Trans Union pending resolution of Defendants' forthcoming (now, present) motion for sanctions and requesting attorneys' fees in connection with its motion for a protective order. *See* Dkt. No. 60 at 1-2. On September 10, 2024, during a telephone conference with the parties, the Court granted Trans Union's motion for a protective order. *See* Dkt. No. 72 at ¶ 3.

Trans Union filed the present motion on August 27, 2024 for the imposition of Rule 37 sanctions based, in large part, on Plaintiff's failure to attend his own deposition on August 8, 2024. *See* Dkt. No 62. Plaintiff filed an opposition to Trans Union's motion on August 28, 2024, a "response in opposition" on September 3, 2024, and a supplemental brief in opposition on September 5, 2024. *See* Dkt. Nos. 65, 67, 71. Trans Union and Experian file this motion for sanctions seeking relief of two kinds: first, dismissal of Plaintiff's claims for failing to appear at his properly noticed deposition, and, second, an award of costs and expenses, including attorneys' fees, for this motion and for defending against Plaintiff's "frivolous" case. Defs.' Moving Br. at p. 2, Dkt. No. 62-6.

Defendants primarily contend that Plaintiff's "actions, and inactions in connection with discovery in this case" intentionally impose undue burden and expense upon Defendants, making it nearly impossible for them to litigate this "meritless" case. *Id.* Moreover, Defendants allege that

6

"Plaintiff has behaved erratically, like a moving target, demanding something different of Trans Union, Experian and the Court nearly every day, including sending dozens of emails to counsel each week, all the while refusing to comply with his own discovery obligations." *Id.* Plaintiff responded by claiming that Trans Union has "demonstrate[d] a pattern of obstructive behavior." Dkt. No. 71 at 3. Therefore, Plaintiff requests that the Court consider imposing sanctions on Trans Union instead. Otherwise, Plaintiff alleges that he has in good faith attempted to conduct discovery. *Id.*; *see also* Dkt. No. 65.

**II.   DISCUSSION**

Federal Rule of Civil Procedure 37 "governs sanctions against a party who fails to provide discovery as required by the discovery rules or a court order." *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 84 (D.N.J. 2006). In particular, Rule 37(b)(2)(A) sets forth a variety of potential sanctions "if a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a)," which may include prohibiting the offending party from supporting or opposing certain claims or defenses, striking pleadings, and dismissing the action in whole or in part. *Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568, 577 (3d Cir. 2018) (citing Fed. R. Civ. P. 37(b)(2)(A)(ii)-(iii), (v)).

Similarly, Rule 37(d) governs sanctions against a party who, despite proper notice, fails to attend his own deposition or serve responses to interrogatories. *See* Fed. R. Civ. P. 37(d)(1)(A)(i)-(ii). Instead of or in addition to the sanctions prescribed by Rule 37(b)(2)(A)(i)-(iv), the court must "order the disobedient party, . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified . . . [.]" Fed. R. Civ. P. 37(b)(2)(C); *see also* Fed. R. Civ. P. 37(d)(3) (listing available sanctions for a party's failure to attend its own deposition, serve answers to interrogatories, or respond to a request for inspection).

7

"Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763-64 (1980) (quoting *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976)). "The Court has broad discretion regarding the type and degree of sanctions it can impose . . . but the sanctions must be just and related to the claims at issue." *Wachtel*, 239 F.R.D. at 84; *DiGregorio v. First Rediscount Corp.*, 506 F.2d 781, 788 (3d. Cir. 1974) ("The choice of an appropriate sanction generally is committed to the sound discretion of the district court.").

1. **Plaintiff's Failure to Appear for His Deposition and Heed this Court's Orders Warrants Sanctions in the Form of Attorneys' Fees and Costs**

Since at least June of 2024, Plaintiff has refused to appear for his deposition. Trans Union originally noticed Plaintiff's deposition for June of 2024. Dkt. No. 33. Apparently unsatisfied with Trans Union's written discovery responses, Plaintiff both refused to appear for his deposition and provide written discovery responses by the May 28, 2024 deadline. *Id.*; *see* Dkt. No. 36 (Plaintiff stating that "he will provide complete discovery responses and sit for a deposition once Trans Union has fully complied with its own outstanding discovery obligations"). On July 2, 2024, the Court ordered Plaintiff to appear for his deposition by no later than August 31, 2024. Dkt. No. 42. On July 8, 2024, Trans Union re-noticed Plaintiff's deposition for August 8, 2024. Decl. of Camille R. Nicodemus, Esq. in support of Trans Union's Mot. For Sanctions ("Nicodemus Decl.") ¶ 4.[3] Experian cross-noticed Plaintiff's deposition for the same date. Plaintiff made no objection. *Id.* The deposition of Trans Union's 30(b)(6) representative was simultaneously scheduled for August 7, 2024.

---

[3] Trans Union issued an amended notice of deposition on August 6, 2024, changing only the location of Plaintiff's deposition from 650 5th Avenue in New York City to the offices of Experian's counsel, located at 250 Vesey Street in New York City. Dkt. No. 62-3 at pp. 2-7.

Although Trans Union appeared via Zoom for its deposition on August 7, 2024, Plaintiff failed to secure a court reporter. Dkt. No. 60-1 at p. 3. Plaintiff urged Trans Union to proceed, but the Court directed Trans Union not to continue in the absence of a court reporter. *Id.* Thereafter, the following events transpired:

> Plaintiff was heard to be calling a court reporter on speakerphone who stated that Plaintiff would have to pay a $1,000 deposit to secure court reporting services. Plaintiff discontinued that call and then went off screen and could not be heard or seen for a period of time. He eventually came back and said that his chosen court reporter's basement had flooded and she could not appear that day and he was attempting to find another court reporter. He then came back on the line and said he didn't have anyone.

*Id.*

Trans Union's counsel informed Plaintiff that, if he so desired, Trans Union would wait for Plaintiff to secure a court reporter. *Id.* After some time, Plaintiff returned to the Zoom deposition with a "digital reporter," at which point Zoom began experiencing technical difficulties that prevented the parties, witnesses, and purported court reporter from communicating. *Id.* Ninety minutes after Trans Union's deposition was to have commenced, the parties agreed to discontinue the Zoom call. *Id.*

Plaintiff did not attempt to reconvene later that day, notwithstanding Trans Union's assurances that its counsel and witness would remain available. *Id.* at pp. 3-4. Instead, Plaintiff served a new notice of deposition to Trans Union for the next day—the same day that Plaintiff's deposition was set to proceed at the offices of Experian's counsel in New York City. *Id.* at p. 4. Also on August 7, 2024, Plaintiff filed a letter notifying the Court that Trans Union's deposition was unable to proceed due to "alleged technical issues and objections raised by Trans Union's counsel." Dkt. No. 58. Thus, Plaintiff re-noticed the 30(b)(6) deposition of Trans Union for the following day, August 8, 2024. Plaintiff further accused Defendants of engaging in a "coordinated

9

obstruction tactic" because they indicated unavailability for Trans Union's deposition on Plaintiff's date of choice, August 14, 2024. *Id.*

On August 8, 2024, Plaintiff failed to appear for his deposition and his non-appearance was entered on the record. Nicodemus Decl. ¶ 5; Dkt. No. 62-4. Since then, Plaintiff has not offered to reschedule or appear for his deposition.

Here, Plaintiff has run afoul of Rule 37 in two key respects. First, he has disregarded Court orders on at least two occasions and thus has violated Rule 37(b)(2)(A). Plaintiff refused, in June of 2024, to meet and confer with Defendants regarding the parties' discovery disputes. He also ignored the Court's May 28, 2024 deadline for written discovery responses. Consequently, Plaintiff has violated the Court's May 14, 2024 Order, which "directed the parties to meet and confer to resolve [their discovery] disputes" and "directed [] respon[ses] to any outstanding discovery requests by no later than May 28, 2024." Dkt. No. 34. Moreover, Plaintiff failed to sit for his deposition despite the Court's unequivocal order to do so. *See* Dkt. No. 42 ("The deposition of Plaintiff shall be taken [by] no later than August 31, 2024."). Plaintiff's failure to appear for his deposition on August 8, 2024 after Defendants served him with proper notice also violates Rule 37(d)(1)(A)(i). Plaintiff has not suggested a "substantial justification" that would excuse his non-compliance. *See Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 241 (3d Cir.2007) (citing *Fitz, Inc. v. Ralph Wilson Plastics Co.*, 174 F.R.D. 587, 591 (D.N.J.1997)) (citation omitted) (A "substantial justification" exists where there is a "genuine dispute concerning compliance"). Therefore, Defendants' request for an award of costs and expenses including reasonable attorneys' fees in connection with the present motion is **GRANTED**.

2. **Dismissal is Not Appropriate at this Juncture**

As stated, the Federal Rules of Civil Procedure authorize dismissal as a penalty for failure

10

to respond to court orders and for failure of a party to attend his own deposition. *See* Fed. R. Civ. P. 37(b)(2), 41(b), 37(d)(1)(3). This Court recognizes the strong policy favoring decisions on the merits barring substantial circumstances in support of dismissal as a penalty. *See Hildebrand v. Allegheny County*, 923 F.3d 128, 132 (3d Cir. 2019).

In *Poulis v. State Farm Casualty Co.*, 747 F.2d 863 (3d Cir. 1984), the Third Circuit identified six factors for courts to balance when deciding whether to impose an involuntary order of dismissal. The *Poulis* factors are:

> (1) The extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the plaintiff's conduct; (3) the history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim.

*Id.* at 868. No single *Poulis* factor is determinative, and dismissal may be appropriate even if some of the factors are not met. *See Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992); *Hicks v. Feeney*, 850 F.2d 152, 156 (3d Cir. 1988). If a court finds dismissal appropriate under *Poulis*, it may dismiss an action *sua sponte*, pursuant to its inherent powers and Federal Rule of Civil Procedure 41(b). *See Iseley v. Bitner*, 216 F. App'x 252, 254-55 (3d Cir. 2007) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)).

**1. Plaintiff's Personal Responsibility**. Plaintiff has, from the beginning of this litigation, appeared *pro se* and is solely responsible for his failure to comply with at least two Court orders: (1) the Court's May 14, 2024 Order directing the parties to meet and confer regarding their discovery disputes and setting the deadline for written discovery responses to May 28, 2024, and (2) the Court's July 2, 2024 Order mandating completion of his deposition by August 31, 2024. *See* Dkt. Nos. 34, 42. By failing both to appear, without notice, for his scheduled deposition on August 8, 2024, and to provide timely and complete written discovery responses, Plaintiff has

made it extremely difficult for Defendants to evaluate the merits of his claims and has stymied discovery despite Defendants' best efforts to move the case forward. Plaintiff was twice noticed of his scheduled deposition on August 8, 2024. First, by Trans Union's counsel, who noticed Plaintiff's deposition via U.S. Mail to Plaintiff's home address, and second by Experian's counsel through the same method. Dkt. No. 62-3. Defendants sent an amended notice of deposition to Plaintiff, therein changing only the location of Plaintiff's deposition. As mentioned, Plaintiff made no objection to either the date or location of his deposition and does not attribute his absence to Defendants' amended notice.

Rather, Plaintiff asserts that Defendants are the sanctionable party because Trans Union, in particular, "failed" to appear for its deposition on August 8, 2024. Considering that the deposition of Trans Union could not proceed on August 7, 2024 because of Plaintiff's own failure to obtain a court reporter and other technical difficulties, Plaintiff's unilateral rescheduling of Trans Union's deposition for the next day was unjustified. *See*, *e.g.*, Dkt. No. 71. Plaintiff's insistence on scheduling Trans Union's deposition for August 8, 2024, although his own deposition had been properly noticed and scheduled by Defendants on that day, highlights Plaintiff's inability to take personal responsibility in this action. Surely, Plaintiff has repeatedly communicated his grievances with Defendants to the Court. Therefore, he has not abandoned his case. Nevertheless, Plaintiff's blame-shifting strategies and patent refusal to sit for his deposition ultimately support dismissal of his claims.[4]

    **2. Prejudice to Defendants.** Permitting Plaintiff's case to go forward when Plaintiff has

---

[4] *See also* Dkt, No. 60-1 at 6 (Defendants explaining Plaintiff's "extreme litigation tactics, including repeatedly filing improper letters with the court, emailing counsel for defendants relentlessly with threats and demands, including as many as eight (8) times in a single day, and [] refus[al] to comply with the requirement that he participate in discovery in this matter, despite having been admonished by the Court").

consistently demonstrated an apparent refusal to participate meaningfully in this litigation or comply with Court orders would cause manifest injustice to Defendants. "Prejudice . . . includes deprivation of information through noncooperation with discovery, and costs expended obtaining court orders to force compliance with discovery." *Adams v. Trs. of N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 874 (3d Cir. 1994) (citation omitted). "It also includes 'the burden imposed by impending a party's ability to prepare effectively a full and complete trial strategy.'" *Briscoe v. Klaus*, 538 F.3d 252, 259 (3d Cir. 2008) (citing *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003)). Plaintiff has neither appeared for his deposition nor provided sufficient responses to Defendants' written discovery requests. Defendants face prejudice from Plaintiff's failure to provide additional information to support his claims. *See Beale v. Wetzel*, No. 13-15 ERIE, 2016 WL 6573854, at *2 (W.D. Pa. Nov. 7, 2016) (finding plaintiff prejudiced by his inability to depose a defendant in the action). As such, this factor weighs against Plaintiff.

    **3. History of Dilatoriness**. Plaintiff has a history of dilatoriness. Plaintiff has failed to cooperate in written discovery, requiring Defendants to seek assistance from the Court on multiple occasions. On May 13, 2024, Trans Union filed a letter indicating that, absent prior Court intervention, it would seek permission to file a motion to compel Plaintiff's written discovery responses and Plaintiff's testimony at deposition. Dkt. No. 33. On July 2, 2024, the Court ordered Plaintiff to "produce any requested documents in his possession to Defendants." Dkt. No. 42. Still, Plaintiff violated the Court's orders by failing to appear at his deposition and by failing to supplement his discovery within the prescribed deadline. Accordingly, the Court finds that Plaintiff's refusal to provide discovery supports dismissal.

    **4. Willfulness or Bad Faith**. The Court will not conclude that Plaintiff has proceeded in bad faith. However, Plaintiff's conduct has been willful. *See Harrington v. All Am. Plazas, Inc.*,

2010 WL 2710573, at * (D.N.J. July 7, 2010) (finding willfulness "where no reasonable excuse for the conduct exist[ed]"). Plaintiff willfully failed to attend his scheduled deposition on August 8, 2024 in violation of the Court's July 2, 2024 Order directing that he be deposed by August 31, 2024. *See Alexe v. Lucent Techs., Inc.*, 2007 WL 3026864, at * 3 (D.N.J. Oct. 17, 2007) (finding willful a plaintiff's failure to obey a court order and appear for a deposition). This factor also supports dismissal as an appropriate remedy.

**5. Effectiveness of Alternative Sanctions**. This factor weighs against dismissal of Plaintiff's claims. Despite failing to appear for his deposition, and consequently violating the Court's July 2, 2024 Order, Plaintiff has otherwise appeared before this Court and participated in prosecuting his case. The Court recognizes that dismissal is a "drastic sanction and should be reserved for those cases where there is a clear record of delay or contumacious conduct." *Poulis*, 747 F.2d at 866 (quoting *Donnelly v. Johns–Manville Sales Corp.,* 677 F.2d 339, 342 (3d Cir.1982)). Accordingly, alternative sanctions are appropriate here.

**6. Meritoriousness of the Claims**. The Court is unable to determine the meritoriousness of Plaintiff's claims at this juncture.

In sum, the Court's analysis demonstrates that all but two *Poulis* factors weigh in favor of dismissal. The factors that clearly favor Defendants are Plaintiff's lack of personal responsibility for his nonappearance at his deposition and disregard of Court orders, the prejudicial impact on Defendants, Plaintiff's history of dilatoriness, and Plaintiff's willfulness. The factors that are not in favor of dismissal are the meritoriousness of Plaintiff's claims and the effectiveness of other sanctions. "While 'no single *Poulis* factor is dispositive,' [the Third Circuit] ha[s] made it clear that 'not all of the *Poulis* factors need be satisfied in order to dismiss a complaint'" or enter default. *Briscoe*, 538 F.3d 252, 263 (3d Cir. 2008) (internal citations omitted). Although four of

six *Poulis* factors provide an adequate foundation to dismiss Plaintiff's case, the Court determines it best to afford the *pro se* Plaintiff a final opportunity to prosecute his claims. Accordingly, Defendants' request for dismissal of Plaintiff's Complaint pursuant to Rule 37 is **DENIED**.

### III.     CONCLUSION & ORDER

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this 19th day of March, 2025,

**ORDERED** that Defendants' motion for Rule 37 sanctions, attorney's fees, and costs [Dkt. No. 62] is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Defendants shall file with the Court an affidavit substantiating the amount of attorneys' fees and costs incurred in connection with the present motion by **April 15, 2025**.

s/ James B. Clark, III
**JAMES B. CLARK, III**
**United States Magistrate Judge**